The Honorable David W. Christel

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>ASHTON CONNOR GARCIA,<br><br>                              Defendant. | NO. CR23-5090 BHS<br><br>**GOVERNMENT'S MEMORANDUM REGARDING DETENTION**<br><br>Detention Hearing:  5-3-2022 at 1:30 p.m. |

17

18

19

20

21

22

23

24

25

26

27

    Ashton Garcia has been charged with a months-long campaign to abuse emergency response resources and terrorize innocent people for fun. Among the dozens of people he swatted were a 14-year-old girl, a 12-year-old girl, an 8-year-old boy, and a former teacher who had survived a school shooting two years earlier and was home with her infant child. Garcia treated their trauma like sport. Given the massive scope of his conduct, the unrepentant malice with which he acted, and the absence of less restrictive conditions that would mitigate the risk of harm to the community, Garcia should be detained.

# I.    FACTUAL BACKGROUND

From intensive investigation, the government is aware of over 20 swatting calls that Garcia made between approximately June 6, 2022, and September 6, 2022. The indictment charges only a fraction of these calls. Even so, investigators still do not know the full scope of Garcia's activities.  The government continues to identify new crimes committed by Garcia, including our recent discovery of a swatting call that Garcia made on January 25, 2023, to Castlerock, Colorado.

When law enforcement agencies responded to these swatting calls and ultimately discovered they were hoaxes, Garcia frequently taunted the responding officers. He told them how fun it was to make the hoax calls and bragged that they could not trace his call or identify him because he was hiding behind "VPNs" (Virtual Private Networks) and "IRCs" (Internet Relay Chats). Garcia also used false names and anonymized email addresses to create VoIP (Voice over Internet Protocol) phone numbers that further obscured the source of the calls. Each of these is a widely available and easily accessible method of disguising the source of an Internet communication.

The following incidents are representative examples of Garcia's broader course of conduct. Beginning in early June 2022, Garcia targeted a transgender woman whom he believed resided at an address in Minnesota. In total, he placed three swatting calls to that address and extorted the woman's father with threats of further harm. The threats included sending text messages that identified family members' names, social media accounts, addresses, phone numbers, and places of employment. Garcia later boasted about this activity, including by telling an associate: "I swatted a faggot." He continued to use the victim's name as an alias when he placed other swatting calls.

Beginning in mid-July, Garcia targeted a 12-year-old girl residing in Ohio. He threatened to swat her if she did not send him her parents' credit card information. After the extortion attempt, Garcia placed a swatting call that sent an armed police response to

Memorandum RE: Motion for Detention - 2
*United States v. Garcia*, CR23-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

her house while she was home alone. Afterward, Garcia laughed about traumatizing the 12-year-old, bragged about taunting the responding law enforcement officers, boasted about how he was too technologically savvy to be caught, and placed two more swatting calls to the 12-year-old's address. Ex. 1, pp. 4-9.[1] He made comments that suggest the calls were racially motivated. Ex. 1, p. 9.

In late July, Garcia called in a hoax bomb threat to Cleveland, Ohio, because he was "bored." Ex. 1, p. 10. A bomb squad evacuated and cleared the targeted building. While he was on the phone with a police officer, Garcia searched the Internet for the officer's personal identifying information, such as her full name and home address, and then read that information back to her while she was on the phone with him.

In mid-August 2022, Garcia swatted a judge at the judge's home address. Investigators do not know whether Garcia knew he was swatting a judge or not.

On August 27, Garcia swatted his neighbor in Bremerton "for shits and giggles" and enjoyed watching the armed response from his bedroom window. Ex. 1, p. 14.

The following day, August 28, Garcia swatted a woman and her 8-year-old son in Edmonton, Alberta, Canada. In the call, he claimed to have shot his mother. For nearly 20 minutes, Garcia joked while the concerned 911 dispatcher tried to talk him through life-saving chest compressions. The victims were asleep when a police officer with a shield broke down their door, followed by numerous other armed law enforcement officers. In a signed witness statement, the woman wrote that the incident "[l]eft my son and I very scared and confused most of all traumatized and my son is getting counseling over the event."

Around the same time, in late August, Garcia demanded that a 14-year-old girl cut his "fansign" into her body. He told her: "i own you," and "you don't want the

---

[1] In the Discord records, Garcia goes by the username "A1FA#9375." In the Instagram records, Garcia goes by the username "SavageCobra02."

consequences of saying no." Ex. 1, p. 11. When she stopped responding to his messages, he demanded: "play with your tits" on camera or "get swatted and terrorized for what will seem like an eternity." Ex. 1, p. 12. A few days later, Garcia made good on his threat and swatted the 14-year-old's home in New Jersey. Due to the nature of the call, the responding officers not only detained the sole occupant of the home at gunpoint, they also performed a house-to-house check in the neighborhood and placed a nearby elementary school on lockdown.

The same day Garcia swatted a 14-year-old girl in New Jersey, he called the Los Angeles Police Department to make a bomb threat about an airport and placed more hoax calls to the Bremerton Police Department.

In early September 2022, a Pennsylvania detective identified Garcia as the perpetrator of a mid-August swatting call. The detective contacted Garcia's parents at their home, where Garcia also lived. Shortly thereafter, Garcia wrote to an associate that he would take a break for a few months and "When I vome bsck [sic] were making this detectiv[es] life a living hell." Ex. 1, p. 13. In late September, the detective spoke to Garcia directly. Garcia admitted that he had placed the swatting call and claimed to be remorseful. But his social media records told a different story. He told his associates that he had charges and a warrant in Pennsylvania and chose not to turn himself in. He bragged about past swatting events, described swatting as "amazing," and claimed to have "done that shit like 1000 times." Ex. 1, pp. 14-15.

In late January 2023, Garcia swatted a residence in Castlerock, Colorado. Because Garcia provided false information that he shot his girlfriend, she was bleeding out, and he refused to provide aid, armed police officers forced entry into the residence. The occupants were a man, woman, and their infant child. The woman was a former teacher who had survived a school shooting two years early, and law enforcement described her response to the armed forced entry as "traumatized, hysterical, and terrified."

1     These are only a small subset of the crimes that Garcia committed and the harm he

2    caused over and over and over again.

3                    **II.**       **LEGAL STANDARD**

4     In ruling on a motion for pretrial detention, the Court must determine whether any

5    condition or combination of conditions will reasonably assure the appearance of the

6    defendant as required, and the safety of any other person and the community. 18 U.S.C. §

7    3142(f).  The Bail Reform Act provides that a court should detain a defendant pending

8    trial if "no condition or combination of conditions . . . will reasonably assure the

9    appearance of the person as required and the safety of any other person and the

10   community."  18 U.S.C. § 3142(f).  The United States bears the burden of showing that

11   the defendant poses a danger to the community by clear and convincing evidence, and it

12   bears the burden of showing that a defendant poses a flight risk by a preponderance of the

13   evidence.  *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991).

14     The Bail Reform Act identifies four factors that a court should consider in

15   analyzing a detention motion:  "(1) the nature and circumstances of the offense charged;

16   (2) the weight of the evidence against the person; (3) the history and characteristics of the

17   person, including (A) the person's character,. . . family ties, employment, financial

18   resources length of residence in the community, community ties, past conduct, history

19   relating to drug or alcohol abuse, criminal history, and record concerning appearance at

20   court proceedings; and (B) whether, at the time of the current offense or arrest, the person

21   was on probation [or] on parole . . .; and (4) the nature and seriousness of the danger to

22   any person or the community that would be posed by the person's release . . . ."

23   *//*

24   *//*

25

26

27

Memorandum RE: Motion for Detention - 5
*United States v. Garcia*, CR23-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III.    REVIEW OF THE DETENTION FACTORS

**A.    Garcia abused emergency resources and intentionally placed people in harm's way.**

The factors that weigh most heavily in this case are the nature and circumstances of Garcia's offenses and that nature and seriousness of the danger Garcia poses to the community if released. Garcia intentionally created situations in which armed law enforcement officers and unsuspecting victims were abruptly forced into a situation that they fundamentally misunderstood, while their adrenaline was running high and while life-or-death decisions had to be made quickly with minimal (and often incorrect) information. Garcia not only knew of the danger, he *used* the danger to threaten and extort his victims. The actual harm Garcia causes is intimidating, terrorizing, and traumatizing people throughout the country, of all ages, and wasting scare emergency resources. The potential harm he creates is that someone will get seriously injured or killed.

Furthermore, the potential risk of retaliation to victims, witnesses, and law enforcement officers is not theoretical. Garcia used swatting as a means of extortion, retaliation, and control. He both taunted and targeted the law enforcement officers that he interacted with in swatting calls. After he was identified by a Pennsylvania detective, he threatened to make the detective's life "a living hell." Ex. 1, p. 13.

Garcia easily sought out and obtained personal identifying information of his victims from online sources. The foundation of his criminal activity was to figure out where his victims lived and who their family members were. There are no conditions of release that can mitigate the danger Garcia poses to the public generally, and to victims and witnesses specifically. The actual and potential harms of swatting calls are significant, as are the effort and resources required to investigate the calls. In contrast, the

Memorandum RE: Motion for Detention - 6
*United States v. Garcia*, CR23-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

effort required to research personal identifying information on the Internet, place a swatting call, and disguise one's identity is minimal.

Considering the broad scope of Garcia's conduct, the malice he exhibited toward victims, and his utter lack of remorse, the Court cannot be confident that Garcia will abide by a condition that prohibits him from using telephones, computers or the Internet. Further, given Garcia's familiarity with methods of concealing his online activities, and his boasts about making his calls untraceable, it is unlikely that Pretrial Services would be able to identify and respond to violations of conditions of release as they occur.

**B.      The weight of the evidence weighs in favor of detention.**

The evidence against Garcia is strong, as illustrated by Exhibit 1. This factor weighs in favor of detention.

**C.      Garcia's history and characteristics.**

The government recognizes that Garcia's age, lack of criminal history, and ties to the community weigh in favor of release. Even so, these mitigating factors are heavily outweighed by the aspects of Garcia's history and characteristics that weigh in favor of detention. For example, the fact that Garcia continued to place swatting calls even after he was contacted by a detective and charged with a swatting crime, is part of his history and characteristics. It is also part of his history and characteristics that he was shamelessly cruel. He bragged about extorting and traumatizing a 12-year-old girl, he tried to intimidate a 14-year-old girl into cutting her body and providing sexual images of herself, he taunted law enforcement, and, rather than showing remorse for what he had done, repeatedly discussed how fun it was and proudly referred to himself as a "cyberterrorist." Ex. 1, p. 2.

Memorandum RE: Motion for Detention - 7
*United States v. Garcia*, CR23-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## V.    CONCLUSION

For the foregoing reasons, the government has shown by clear and convincing evidence that there are no less restrictive conditions or combination of conditions that will reasonably ensure public safety if Garcia is released from custody.

DATED this 26th day of April, 2023.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Jessica M. Manca*
JESSICA M. MANCA
Assistant United States Attorney
United States Attorney's Office

Memorandum RE: Motion for Detention - 8
*United States v. Garcia*, CR23-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970