The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ASHTON CONNOR GARCIA,<br><br>Defendant. | NO. CR23-5090 BHS<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REVOKE THE DETENTION ORDER AND SET CONDITIONS OF RELEASE** |

Ashton Garcia is charged with a months-long campaign to abuse emergency response resources and terrorize innocent people for fun. Referring to himself as a "cyberterrorist," Garcia located personal identifying information that is readily available on the Internet and then used that information to threaten, harass, and extort his victims. Garcia's primary weapons were targeted bomb threats and "swatting" calls. Swatting is the malicious practice of falsely reporting a serious life-threatening emergency, usually a life-threatening violent crime, to elicit an armed police (SWAT team) response to a targeted location. It is typically used as a means of harassing, intimidating, and retaliating against others. If the targeted location is a residence, the armed police response might

Response to Def.'s Mot. To Revoke Detention Order - 1
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

involve flash bangs, doors forced open, houses searched, and residents detained in handcuffs. If the targeted location is a school, hospital, airport, or commercial building, a swatting call can cause evacuation or lockdown. The fundamental purpose of a swatting call is to create a high-stress dynamic in which both parties (the victim(s) and the law enforcement responders) are making life-or-death decisions quickly, with limited information, while fundamentally misunderstanding the true nature of the situation. For this reason, every swatting call invites a substantial risk that someone will be seriously injured or killed.

Garcia was a prolific swatter. He treated swatting calls as a source of entertainment by broadcasting the calls to an online audience on a social media platform known as Discord. He also used swatting as a means of extortion. He threatened to swat a 12-year-old girl in Ohio if she did not send him her parents' credit card information, and then swatted her and her family. Dkt. 1 (Count 1). He threatened to swat a 14-year-old girl in New Jersey if she did not "play with her tits" on camera, and then swatted her and her family. Dkt. 1 (Count 7). In the New Jersey case, Garcia's swatting call not only elicited a large armed police response to the 14-year-old's home; the call forced a nearby elementary school to go on lockdown.

Garcia targeted people throughout the United States, including residents of California, Colorado, Florida, Georgia, Illinois, Kentucky, Michigan, Minnesota, New Jersey, Ohio, Tennessee, Pennsylvania, Washington, and even a family in Alberta, Canada. In addition to targeting a 12-year-old girl and a 14-year-old girl, he also swatted his neighbor in Bremerton, a mother and her 8-year-old son, and a former teacher who had previously survived a school shooting and was home with her infant child. Several victims submitted statements that describe the harm Garcia caused and express fear about his release from custody. Ex. 2 (Victim Impact Statements) (filed under seal).

Response to Def.'s Mot. To Revoke Detention Order - 2
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The indictment charges Garcia with 10 felony counts ranging from bomb threats to hoaxes to extortion. *See* Dkt. 1. The indictment does not charge him with the full range of his known conduct, which includes over 20 swatting and threat calls throughout the United States and into Canada.

Garcia's displayed an extraordinary level of malice when he attacked victims. *See* Ex. 1 (Social Media Excerpts). He did not display remorse, but rather bragged about how much fun he was having. He frequently used swatting as a means of intimidation and retaliation. There are no less restrictive conditions, or combination of conditions, that can mitigate the risk the poses to the community. In particular, a computer monitoring condition cannot mitigate the risk that Garcia would simply use someone else's phone or someone else's computer to continue swatting existing victims, or new victims. Probation cannot monitor Garcia's Internet use if he conceals his Internet use from them, and there is a considerable risk that he would resume and conceal his swatting activities if released. Garcia should be detained, and Court should deny this appeal of his detention order.

## I.   FACTUAL BACKGROUND

Garcia made dozens of swatting calls throughout the United States between June 2022 and March 2023. In late March 2023, a grand jury in the Western District of Washington returned an indictment charging Garcia with two counts of extortion (involving victims who are minors); five counts of making bomb threats or hoax calls involving explosives; one count of making a hoax call involving firearms; one count of making interstate threats; and one count of making a bomb threat involving an aircraft. *See* Dkt. 1. The indictment also alleges that Garcia invited Discord users to watch him place swatting calls at certain dates and times and hosted Discord servers to broadcast swatting calls to an online audience. *Id.*

When law enforcement agencies responded to Garcia's swatting calls and ultimately discovered the calls were hoaxes, Garcia frequently taunted the responding

Response to Def.'s Mot. To Revoke Detention Order - 3
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

officers. He told them how fun it was to make the hoax calls and bragged that they could not trace his call or identify him because he was hiding behind "VPNs" (Virtual Private Networks) and "IRCs" (Internet Relay Chats). Garcia also used false names and anonymized email addresses to create VoIP (Voice over Internet Protocol) phone numbers that further obscured the source of the calls. Each of these is a widely available and easily accessible method of disguising the source of an Internet communication.

The following incidents are representative examples of Garcia's broader course of conduct. Beginning in early June 2022, Garcia targeted a transgender woman whom he believed resided at an address in Minnesota. In total, he placed three swatting calls to that address and extorted the woman's father with threats of further harm. The threats included sending text messages that identified family members' names, social media accounts, addresses, phone numbers, and places of employment. Garcia later boasted about this activity, including by telling an associate: "I swatted a faggot." He continued to use the victim's name as an alias when he placed other swatting calls.

Beginning in mid-July, Garcia targeted a 12-year-old girl residing in Ohio. He threatened to swat her if she did not send him her parents' credit card information. After the extortion attempt, Garcia placed a swatting call that sent an armed police response to her house while she was home alone. Afterward, Garcia laughed about traumatizing the 12-year-old, bragged about taunting the responding law enforcement officers, boasted about how he was too technologically savvy to be caught, and placed two more swatting calls to the 12-year-old's address. Ex. 1, pp. 4-9.[1] He made comments that suggest the calls were racially motivated. Ex. 1, p. 9.

In late July, Garcia called in a hoax bomb threat to Cleveland, Ohio, because he was "bored." Ex. 1, p. 10. A bomb squad evacuated and cleared the targeted building.

---

[1] In the Discord records, Garcia goes by the username "A1FA#9375." In the Instagram records, Garcia goes by the username "SavageCobra02."

Response to Def.'s Mot. To Revoke Detention Order - 4
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

While he was on the phone with a police officer, Garcia searched the Internet for the officer's personal identifying information, such as her full name and home address, and then read that information back to her while she was on the phone with him.

In mid-August 2022, Garcia swatted a judge at the judge's home address. Investigators do not know whether Garcia knew he was swatting a judge or not.

A couple weeks later, Garcia swatted his neighbor in Bremerton "for shits and giggles" and enjoyed watching the armed response from his bedroom window. Ex. 1, p. 14.

The next day, Garcia swatted a woman and her 8-year-old son in Edmonton, Alberta, Canada. In the call, he claimed to have shot his mother. For nearly 20 minutes, Garcia joked while the concerned 911 dispatcher tried to talk him through life-saving chest compressions. The victims were asleep when a police officer with a shield broke down their door, followed by numerous other armed law enforcement officers. In a signed witness statement, the woman wrote that the incident "[l]eft my son and I very scared and confused most of all traumatized and my son is getting counseling over the event."

Around the same time, in late August, Garcia demanded that a 14-year-old girl cut his "fansign" into her body. He told her: "i own you," and "you don't want the consequences of saying no." Ex. 1, p. 11. When she stopped responding to his messages, he demanded: "play with your tits" on camera or "get swatted and terrorized for what will seem like an eternity." Ex. 1, p. 12. A few days later, Garcia made good on his threat and swatted the 14-year-old's home in New Jersey. Due to the nature of the call, the responding officers not only detained the sole occupant of the home at gunpoint, they also performed a house-to-house check in the neighborhood and placed a nearby elementary school on lockdown.

Response to Def.'s Mot. To Revoke Detention Order - 5
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The same day Garcia swatted a 14-year-old girl in New Jersey, he called the Los
2 Angeles Police Department to make a bomb threat about an airport and placed more hoax
3 calls to the Bremerton Police Department.

4    In early September 2022, a Pennsylvania detective identified Garcia as the
5 perpetrator of a mid-August swatting call. The detective contacted Garcia's parents at
6 their home, where Garcia also lived. Shortly thereafter, Garcia wrote to an associate that
7 he would take a break for a few months and "When I vome bsck [sic] were making this
8 detectiv[e's] life a living hell." Ex. 1, p. 13. In late September, the detective spoke to
9 Garcia directly. Garcia admitted that he had placed the swatting call and claimed to be
10 remorseful. But his social media records told a different story. He told his associates that
11 he had charges and a warrant in Pennsylvania and chose not to turn himself in. He
12 bragged about past swatting events, described swatting as "amazing," and claimed to
13 have "done that shit like 1000 times." Ex. 1, pp. 14-15.

14    Neither the criminal charge in Pennsylvania nor his conversation with the
15 detective deterred Garcia from continuing his swatting campaign. In late January 2023,
16 Garcia swatted a residence in Castle Rock, Colorado. Because Garcia provided false
17 information that he shot his girlfriend, she was bleeding out, and he refused to provide
18 aid, armed police officers forced entry into the residence. The occupants were a man,
19 woman, and their infant child. The woman was a former teacher who had survived a
20 school shooting two years early, and law enforcement described her response to the
21 armed forced entry as "traumatized, hysterical, and terrified."

22    Garcia swatted another victim in Orlando, Florida, on March 1, 2023. This was the
23 third swatting call placed to that victim's residence in a three-week period. After the third
24 swatting call, the victim was contacted by a not-yet-identified male (likely Garcia or a co-
25 conspirator) who asked if the victim was going to pay to make the swatting stop.

26
27

Response to Def.'s Mot. To Revoke Detention Order - 6
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The government has identified additional swatting calls potentially associated with
2   Garcia and continues to investigate those calls as well.

## II. PROCEDURAL BACKGROUND

Garcia was arrested on March 30, 2023, the day after he was indicted. Dkt. 6. The defense asked the Court to continue the detention hearing to finalize a release proposal. Dkt. 11, 13, 20. At a detention hearing on May 18, 2023, the Honorable David W. Christel, United States Magistrate Judge found that Garcia posed a danger to the community and entered a detention order. Dkt. 28, 29.

Judge Christel made detailed oral findings as to each of the four factors identified by the Bail Reform Act. *See* 18 U.S.C. § 3142(g). Regarding the nature and circumstances of the offense, Judge Christel found that the allegations against Garcia were very serious, particularly considering that some of his victims were minors and his offenses involved gathering personal identifying information about victims and intentionally placing victims' personal safety at risk. As to the strength of the evidence, it was significant to Judge Christel that Garcia was not charged with a single isolated incident, but rather with multiple incidents taking place over several months, targeting victims throughout the country. He described Garcia's conduct as "continuous actions to threaten, extort, and harass a variety of people."

Regarding Garcia's history and characteristics, Judge Christel acknowledged that Garcia is young (20 years old), has no criminal history, has significant ties to the Western District of Washington, and has a release address approved by Pretrial Services. Even so, Judge Christel noted the aggravating factor that Garcia continued to place swatting calls after he was contacted by a Pennsylvania detective and charged with a swatting crime. Finally, Judge Christel considered the risk of harm to charged victims and new victims if Garcia were released. He expressed concern about the evidence that Garcia used swatting as a means of intimidation and retaliation.

Response to Def.'s Mot. To Revoke Detention Order - 7
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on these factors, Judge Christel found that the government had proved by clear and convincing evidence that Garcia posed a risk of danger to the community, and that no conditions of release could adequately mitigate that risk. Judge Christel stated, "In a situation like this where the Internet was used in a way that [Garcia] used it," the proffered conditions were not sufficient to protect existing victims and the community from the danger posed by Garcia's activities. The victims' statements troubled the court because those statements showed that Garcia's offenses had a lasting, significant, and harmful impact on parents and their children. Because of "the broad scope of conduct" and "the high level of malice exhibited toward victims," the court "could not be confident" that Garcia would abide by conditions of release, specifically the conditions that prohibited him from using telephones, computers, or other devices to access the Internet and contact victims. Absent a detention order, each of the victims and their families would remain at risk of additional harassment, and their awareness of that risk would continue to instill fear.

### III.   LEGAL STANDARD

An appeal of a magistrate's detention order is governed by 18 U.S.C. § 3145(b), which provides:

> If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order . . . .

The district court reviews the magistrate judge's detention order de novo and "make[s] its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).

The Court must determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f).  The Bail Reform Act provides

Response to Def.'s Mot. To Revoke Detention Order - 8
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  that a court should detain a defendant pending trial if "no condition or combination of
2  conditions . . . will reasonably assure the appearance of the person as required and the
3  safety of any other person and the community." 18 U.S.C. § 3142(f).  The United States
4  bears the burden of showing that the defendant poses a danger to the community by clear
5  and convincing evidence, and it bears the burden of showing that a defendant poses a
6  flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118,
7  1120 (9th Cir. 1991).
8        In ruling on pretrial detention, the Court considers four factors:  "(1) the nature
9  and circumstances of the offense charged, including whether the offense . . . involves a
10 firearm; (2) the weight of the evidence against the person; (3) the history and
11 characteristics of the person, including (A) the person's character,. . . family ties,
12 employment, financial resources length of residence in the community, community ties,
13 past conduct, history relating to drug or alcohol abuse, criminal history, and record
14 concerning appearance at court proceedings; and (B) whether, at the time of the current
15 offense or arrest, the person was on probation [or] on parole . . .; and (4) the nature and
16 seriousness of the danger to any person or the community that would be posed by the
17 person's release . . . ." 18 U.S.C. § 3142(g).

### IV.   REVIEW OF THE DETENTION FACTORS

**A.   Garcia abused emergency resources and intentionally placed people in harm's way.**

The factors that weigh most heavily in this case are the nature and circumstances of Garcia's offenses and that nature and seriousness of the danger Garcia poses to the community if released. Garcia intentionally created situations in which armed law enforcement officers and unsuspecting victims were abruptly forced into a situation that they fundamentally misunderstood, while their adrenaline was running high and while

Response to Def.'s Mot. To Revoke Detention Order - 9
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

life-or-death decisions had to be made quickly with minimal (and often incorrect) information. Garcia not only knew of the danger, he *used* the danger to threaten and extort his victims. The actual harm Garcia causes is intimidating, terrorizing, and traumatizing people throughout the country, of all ages, and wasting scare emergency resources. The potential harm he creates is that someone will get seriously injured or killed.

Furthermore, the potential risk of retaliation to victims, witnesses, and law enforcement officers is not theoretical. Garcia used swatting as a means of extortion, retaliation, and control. He both taunted and targeted the law enforcement officers that he interacted with in swatting calls. After he was identified by a Pennsylvania detective, he threatened to make the detective's life "a living hell." Ex. 1, p. 13.

Garcia easily sought out and obtained personal identifying information of his victims from online sources. The foundation of his criminal activity was to figure out where his victims lived and who their family members were. There are no conditions of release that can mitigate the danger Garcia poses to the public generally, and to victims and witnesses specifically. The actual and potential harms of swatting calls are significant, as are the effort and resources required to investigate the calls. In contrast, the effort required to research personal identifying information on the Internet, place a swatting call, and disguise one's identity is minimal.

Considering the broad scope of Garcia's conduct, the malice he exhibited toward victims, and his utter lack of remorse, the Court cannot be confident that Garcia will abide by a condition that prohibits him from using telephones, computers or the Internet. Further, given Garcia's familiarity with methods of concealing his online activities, and his boasts about making his calls untraceable, it is unlikely that Pretrial Services would be able to identify and respond to violations of conditions of release as they occur.

B. **The weight of the evidence weighs in favor of detention.**

Response to Def.'s Mot. To Revoke Detention Order - 10
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The evidence against Garcia is strong, as illustrated by the Indictment and Exhibit 1. This factor weighs in favor of detention.

### C. Garcia's history and characteristics.

The government recognizes that Garcia's age, lack of criminal history, and ties to the community weigh in favor of release. Even so, these mitigating factors are heavily outweighed by the aspects of Garcia's history and characteristics that weigh in favor of detention. For example, the fact that Garcia continued to place swatting calls even after he was contacted by a detective and charged with a swatting crime, is part of his history and characteristics. It is also part of his history and characteristics that he was shamelessly cruel. He bragged about extorting and traumatizing a 12-year-old girl, he tried to intimidate a 14-year-old girl into cutting her body and providing sexual images of herself, he taunted law enforcement, and, rather than showing remorse for what he had done, repeatedly discussed how fun it was and proudly referred to himself as a "cyberterrorist." Ex. 1, p. 2.

//

//

Response to Def.'s Mot. To Revoke Detention Order - 11
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

Consistent with Judge Christel's findings, Garcia exhibited a high level of malice toward victims during a months-long harassment campaign that intentionally placed victims at risk of serious bodily injury or death. He poses a danger to the community that cannot be mitigated by conditions of release. For the foregoing reasons, the Court should deny Garcia's appeal and affirm Judge Christel's detention order.

DATED this 8th day of June, 2023.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Jessica M. Manca*
JESSICA M. MANCA
Assistant United States Attorney
United States Attorney's Office

Response to Def.'s Mot. To Revoke Detention Order - 12
*United States v. Garcia*, CR32-5090 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970